**TOBIAS HOLDINGS, INC., Plaintiff,**

v.

**BANK UNITED CORP. and Goldman Sachs Mortgage Company, Defendants.**

**No. 01 Civ. 1343(SAS).**

United States District Court, S.D. New York.

Aug. 14, 2001.

**164**

Richard J.J. Scarola, Scarola Reavis & Parent, New York, New York, for Plaintiff.

Howard G. Sloane, Catherine Smith, Cahill Gordon & Reindel, New York, New York, for Defendants.

## MEMORANDUM OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

 Plaintiff has brought a federal securities fraud action alleging violations of section 10(b) of the Securities and Exchange Act of 1934, see 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, see 17 C.F.R. § 240.10b–5. Plaintiff's Amended Complaint ("Am.Cmpl.") also asserts state common law claims for fraud, breach of contract, conspiracy, and tortious interference with contract. Federal jurisdiction over the state claims is based on diversity of citizenship.[1] Defendants have moved to dismiss the Amended Complaint. The automatic stay of discovery provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77a et seq., require a stay of discovery in claims arising under that statute until after the motion to dismiss has been decided.[2] Here, despite the stay of discovery required by the PSLRA, plaintiff seeks discovery on all state claims except the common law fraud claim.[3] The narrow question presented is whether the PSLRA stays discovery with respect to plaintiff's non-fraud state law claims where jurisdic-

---

1. Although the factual allegations in the Amended Complaint are applicable to all claims for relief, the exercise of supplemental jurisdiction is not required as the Amended Complaint alleges complete diversity of citizenship. See Am. Cmpl. ¶¶ 1–4. Compare 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution") with 28 U.S.C. § 1332(a)(1) ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, ... and is between citizens of different States").

2. The automatic stay provision applicable to any private action brought under the Securities Exchange Act of 1934 is found at 15 U.S.C. § 78u–4(b)(3)(B). That section, entitled "Stay of discovery," states:

In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

Furthermore, 15 U.S.C. § 78u–4(b)(3)(D), entitled "Circumvention of stay of discovery," states:

Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.

Identical provisions apply to any private action brought under the Securities Act of 1933. See 15 U.S.C. §§ 77z–1(b)(1) and (b)(4).

3. See Transcript of June 7, 2001 Court Conference at 14, 18–19. The point is mostly theoretical, however, as plaintiff's counsel has conceded that the discovery requested on the breach of contract and tortious interference claims would overlap with discovery on the federal securities claims.

tion over such claims is based on diversity of citizenship. For the following reasons, I conclude that it should not.

## II. DISCUSSION

### A. Statutory Construction

 "Where the meaning of a statute is textually ambiguous, [courts] may consult its legislative history." *Washington v. Schriver*, 240 F.3d 101, 108 (2d Cir.2001) (citing *Oklahoma v. New Mexico*, 501 U.S. 221, 235 n. 5, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1991)), *superseded on other grounds*, 255 F.3d 45 (2d Cir.2001); *see also Lee v. Bankers Trust Co.*, 166 F.3d 540, 544 (2d Cir.1999) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous.").

> [The] first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.
>
> The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quotation marks and citations omitted). Where there is ambiguity, however, courts may " 'focus upon the broader context and primary purpose of the statute.' " *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 371 (2d Cir.1999) (quoting *Castellano v. City of New York*, 142 F.3d 58, 67 (2d Cir.1998)).

Here, the ambiguity arises because the automatic stay provisions apply to "any private action arising under" Chapter 2B of Title 15 of the United States Code and "any private action arising under" Subchapter 1 of Chapter 2A of Title 15 of the United States Code. 15 U.S.C. § 78u–4(b)(3)(B) and § 77z–1(b)(1). It is not clear from the face of the statute whether Congress contemplated the situation where both federal question and diversity jurisdiction are invoked in a single action. Conceptually, the claims can be split into two groups: the federal securities fraud claims which are subject to the automatic stay and the state law claims which are not. Because the statutory language is silent on this issue, resort to legislative history is permitted to determine the scope of the automatic stay provisions.

### B. Legislative History

 The PSLRA was passed to redress certain perceived abuses in securities litigation including "the abuse of the discovery process to coerce settlement." *In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 530–31 (3d Cir.1999).

> The purpose of the [PSLRA] was to restrict abuses in securities class action litigation, including: (1) the practice of filing lawsuits against issuers of securities in response to any significant change in stock price, regardless of defendants' culpability; (2) the targeting of "deep pocket" defendants: (3) the abuse of the discovery process to coerce settlement; and (4) manipulation of clients by class action attorneys.

*Id.* at 531 (citing H.R. Conf. Rep. No. 104–369, 104th Cong. 1st Sess. at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 748 ("Conference Report")).

 To prevent the unnecessary imposition of discovery costs on defendants, the PSLRA includes provisions for a mandatory stay of discovery which are found at 15 U.S.C. § 77z–1(b)(1) and § 78u–4(b)(3)(B).

Under these provisions, "unless exceptional circumstances are present, discovery in securities actions is permitted only after the court has sustained the legal sufficiency of the complaint." *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001).

> The purposes of these provisions were acknowledged to include the protection of the defendants in [securities fraud class actions] from being subjected to extortionate demands for settlement on behalf of class plaintiffs simply because of the high costs associated with discovery in these cases; protection of the corporate defendants from federal judges' reluctance to impose Rule 11 sanctions in frivolous lawsuits; and protection of the corporate defendants from plaintiffs' counsel "discovering" their way into facts which could allow them to amend an initially frivolous complaint so as to state a claim.

*In re Transcrypt Int'l Sec. Litig.*, 57 F.Supp.2d 836, 841 (D.Neb.1999) (citing Conference Report at 32).

None of the perceived abuses addressed by Congress are present in this case. Plaintiff is not attempting to use discovery as a "fishing expedition" to find a sustainable claim not alleged in its Complaint which has already been amended. Furthermore, as this is not a class action, there is little, if any, coercive aspect to plaintiff's discovery demands.[4] Finally, this is not a frivolous lawsuit designed to extort money from defendants who would rather settle than pay exorbitant discovery costs.

## C. Diversity Jurisdiction

Although plaintiff's state law claims arise from the same set of facts as the federal securities claims, they are separate and distinct claims that cannot be summarily dismissed. Furthermore, even if the federal securities claims are dismissed, the state law claims may survive. *See Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 963 (2d Cir.1987) (after district court dismissed federal claims, it should not have also dismissed state law claims because jurisdiction was based on diversity of citizenship as well as pendent jurisdiction); *see also Jaquith v. Newhard*, No. 91 Civ. 7503, 1993 WL 127212, at *18 (S.D.N.Y. Apr. 20, 1993) ("Upon dismissal of the RICO claim and a finding that the state claims were not pendent to the remaining 10b–5 claim, the Court cannot automatically dismiss the state claims, but rather must determine if there is an independent basis of jurisdiction for such claims.").

In *In re Trump, Hotel S'holder Derivative Litig.*, No. 96 Civ. 7820, 1997 WL 442135, at *1 (S.D.N.Y. Aug. 5, 1997), this Court was confronted with a federal securities fraud shareholder derivative action that also asserted claims based on diversity of citizenship. Magistrate Judge Henry B. Pitman applied the PSLRA's automatic stay provisions and denied plaintiffs' motion to compel discovery. In so doing, Judge Pitman stated:

> 679, 693 ("The Securities Subcommittee heard testimony that discovery in securities class actions resembles a fishing expedition.... Accordingly, the Committee has determined that discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint.").

---

4. Although the discovery stay provisions are not limited to federal securities *class* actions, the PSLRA's legislative history indicates that class actions were the main focus of the PSLRA. *See* Conference Report at 32 ("Section 101 contains provisions to reform abusive securities class action litigation."); Senate Report No. 104–98, 104th Cong. 1st Sess. at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N.

Plaintiffs next argue that staying discovery in this matter operates unfairly because it effectively penalizes them for alleging a federal securities law claim in conjunction with their state law claims. Plaintiffs contend that had they chosen to proceed on their state law claims alone, the PSLRA [,] by, [sic] its own terms, would be inapplicable and there would be no stay. Although plaintiffs appear [to] be correct that the PSLRA has no application to actions in which only state law claims are alleged, this is simply not such an action. Having chosen to invoke Section 14 of the Exchange Act, plaintiffs are necessarily subject to the PSLRA. There is simply nothing in either the text or the legislative history of the PSLRA that suggests that Congress intended to except federal securities actions in which there happens to be both diversity of citizenship and pendent state law claims.

*Id.* at *2.[5]

I respectfully disagree with Judge Pitman's conclusion and reasoning for a number of reasons. *First,* the fact that Congress is silent with respect to a case invoking both federal question and diversity jurisdiction cannot be taken as evidence that Congress considered plaintiff's argument but rejected it. Indeed, Congressional silence more likely means that the issue was not considered. *Second,* the

discovery stay provisions are not absolute but allow for particularized discovery when needed to preserve evidence or prevent undue prejudice to a party. *See In re Grand Casinos, Inc. Sec. Litig.,* 988 F.Supp. 1270, 1272 (D.Minn.1997) ("If, . . . Congress had intended an absolute stay on discovery, then Congress would not have authorized a judicial reprieve from such a stay, when a reprieve is needed."). Such statutory flexibility lends further support to the argument that an exception based on the presence of non-fraud common law claims brought under diversity jurisdiction would not frustrate the will of Congress. Finally, permitting discovery to proceed here would not represent an impermissible "end run" around the PSLRA's automatic stay provisions. Plaintiff did not simply append state law securities fraud or common law fraud claims to its Complaint in order to bypass the stay. Plaintiff's state law claims are substantive claims which, in addition to fraud claims, include separate and distinct breach of contract and tortious interference claims.

The Complaint is quite different from that at issue in *In re Rational Software Sec. Litig.,* 28 F.Supp.2d 562, (N.D.Cal. 1998), *vacated sub nom., SG Cowen Sec. Corp. v. United States Dist. Court for the Northern Dist. of California,* 189 F.3d 909 (9th Cir.1999). There, plaintiffs filed a con-

---

**5.** Judge Pitman's reference to "pendent state law claims" is a bit misleading. Diversity of citizenship is a separate and independent basis for jurisdiction. Although not mutually exclusive, when the requirements of 28 U.S.C. § 1332 are met, a court need not rely on pendent or supplemental jurisdiction to hear non-federal claims. *Cf. McGowan v. Cadbury Schweppes, PLC,* 941 F.Supp. 344, 348 (S.D.N.Y.1996) (finding that because Second Circuit is of the view that 28 U.S.C. § 1367 has not overruled *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), court was not able to exercise

supplemental jurisdiction over unnamed class members whose claims did not reach the jurisdictional minimum under the diversity statute); *see also North Am. Mech. Servs. Corp. v. Hubert,* 859 F.Supp. 1186, 1188 (C.D.Ill.1994) ("[T]he legislative history of § 1367 provides that '[i]n diversity cases, the district courts may exercise supplemental jurisdiction, except when doing so would be inconsistent with the jurisdictional requirements of the diversity statute.' ") (quoting H.R.Rep. No. 734, 101st Cong.2d Sess. at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6802, 6860, 6875).

solidated amended complaint asserting federal and state law insider trading claims against various defendants. *See* 28 F.Supp.2d at 564. The district court held that the PSLRA's discovery stay extends "to state law securities fraud claims asserted in a federal forum in conjunction with federal law claims." *Id.* at 565. The district court proceeded to allow limited discovery after concluding that plaintiffs made a threshold showing of prejudice. *See id.* at 566. On appeal, the Ninth Circuit issued a writ of mandamus vacating the district court's order. *See SG Cowen,* 189 F.3d at 913. In so doing, the court also rejected plaintiff's argument that the district court should have permitted discovery because of the pendent state claims.[6] *See id.* at 913, n. 1. Reiterating the words of the district court, the Ninth Circuit explained,

> Congress' attempt to address [concerns of discovery abuse] would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting *pendent* state law claims in federal court in conjunction with their federal law claims.

*Id.* (alteration in original, emphasis added). Here, plaintiff's state law claims do not mirror the federal securities claims but represent legally cognizable, substantive causes of action. Furthermore, as noted earlier, these claims are not truly pendent claims as this Court has independent jurisdiction—diversity of citizenship—requiring

it to hear those claims. Accordingly, the holding in *Rational Software* is inapplicable.

## D. Judicial Efficiency

 Plaintiff should not be penalized for bringing both its federal securities claims and related state common law claims in one federal action. To prohibit discovery on the state claims would encourage a duplication of effort and serve as a disincentive for efficiency. Plaintiff could have brought its state claims in state court in a separate action. Such an action would not be precluded by the Securities Litigation Uniform Standards Act of 1998, P.L. 105–353, 112 Stat. 3227 (1998), which effectively precludes litigation of securities class actions in state courts. *See* 15 U.S.C. § 77p. Furthermore, if plaintiff did bring a separate state court action for the common law non-fraud claims, it is highly unlikely that discovery in that action would be halted by a federal court. While a federal court does have the power to stay discovery in state court proceedings, the grounds on which it may do so are quite limited: "Upon a proper showing, a court may stay discovery proceedings in any private action in a State court as necessary *in aid of its jurisdiction, or to protect or effectuate its judgments,* in an action subject to a stay of discovery...."[7] 15 U.S.C. § 78u–4(b)(3)(D) (emphasis added); *see also* 15 U.S.C. § 77z–1(b)(4). Here, a federal court hearing only the federal securities claims would have no basis on

---

**6.** The only basis for jurisdiction was federal question based on the federal securities fraud claim. The court's diversity jurisdiction was not invoked.

**7.** "The All Writs Act states that federal courts may 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *United States v. International Bhd. of Teamsters,* 266 F.3d 45, 49–50 (2nd Cir.2001) (quoting 28 U.S.C. § 1651(a)). That includes

the power to "'issue such commands ... as may be necessary or appropriate to effectuate and prevent the frustration of orders [the court] has previously issued in its exercise of jurisdiction otherwise obtained.'" *Sheet Metal Contractors Ass'n of N. N.J. v. Sheet Metal Workers' Int'l Ass'n,* 157 F.3d 78, 82 (2d Cir. 1998) (quoting *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 401, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)).

which to stay discovery in a parallel state action involving non-fraud claims because the non-fraud claims would not interfere with the jurisdiction of the federal court or threaten its judgments in any way.

The availability of a single forum to hear both federal and state claims should not be diminished by an unduly broad application of a statute which itself is an exception to the usual practice in federal courts—permitting discovery to continue during the pendency of a motion to dismiss. Thus, the automatic stay mandated by the PSLRA cannot prohibit discovery on non-fraud common law claims arising under the Court's diversity jurisdiction. To hold otherwise would give the PSLRA too broad a brush, sweeping into its purview all related but distinct state law claims brought under diversity jurisdiction. Discovery relating to plaintiff's non-fraud state law claims shall proceed forthwith.